**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Alberto A. Rodriguez (Y-24865), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17-cv-6544 |
| v. ) | |
| ) | Hon. Sharon Johnson Coleman |
| Sgt. Judkins, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' motions for summary judgment (Dkt Nos. 122, 123) on the grounds that Plaintiff failed to exhaust his administrative remedies, to which Plaintiff has responded. For the reasons stated below, Defendants' motions are granted.

**I.     BACKGROUND**

Plaintiff Alberto A. Rodriguez, now a prisoner at Illinois River Correctional Center, brought this civil rights lawsuit under 42 U.S.C. § 1983 alleging that correctional officials at the Cook County Jail failed to protect him from a March 13, 2017, attack by other inmates. Plaintiff, represented by recruited counsel, filed a First Amended Complaint (Dkt. No. 52), but is now proceeding *pro se*. The Amended Complaint asserts against Jones, Judkins, Domma, and Officer Hernandez (who was not served) claims of failure to protect/deliberate indifference to his safety in violation of the Fourteenth Amendment and a state-law claim for indemnification. (*Id.*)

Defendants Sgt. Judkins and Officer Domma have filed a joint motion for summary judgment (Dkt. No. 122), and Defendant Superintendent Jones has filed a separate motion for summary judgment (Dkt. No. 123). All Defendants moved for summary judgment on the ground that Plaintiff did not exhaust his administrative remedies. The Court then ordered supplemental

briefing on the issue of whether Plaintiff had an available remedy to contest his assignment to Division 9, Tier 2B on the basis that it put his security at risk. (Dkt. No. 147.) The parties have filed supplemental briefs and responses. (Dkt. Nos. 154, 157, 160, 162.) Prior to that, Plaintiff also filed, without leave, an "additional reply" opposing the summary judgment motion. (Dkt. No. 146.)

### A. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 sets out a procedure for presenting facts pertinent to a party's request for summary judgment pursuant to Fed. R. Civ. P. 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a). The opposing party must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* The nonmoving party may also present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C).

The district court may limit its analysis of the facts on summary judgment "to evidence that is properly identified and supported in the parties' statements." *Bordelon v. Chicago Sch.*

*Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

Because Plaintiff is proceeding *pro se*, each set of Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. Nos. 127, 128.) Plaintiff accepted Defendants' Statements of Material Fact as true for the purposes of his response. (*See* Pl.'s Resp., Dkt. No. 136, at pg. 2.) He also added his own Statement of Material Facts, to which Defendants responded. (*See id.* at pgs. 2-4; Dkt. Nos. 137, 138-1.) Defendants Judkins and Domma also submitted a Supplemental State of Facts (Dkt. No. 155), to which Plaintiff did not respond. Because Plaintiff has not disputed Defendants' statement of facts, the Court considers them admitted to the extent they are supported by the record.

### B. Factual Background

On March 13, 2017, Plaintiff and another inmate were attacked by six other inmates in Division 9, Tier 2B, resulting in multiple stab wounds and other injuries to Plaintiff. (*See* Def. Jones' SOF, Dkt. No. 125, at ¶ 14.)

Plaintiff's complaint concerns events both preceding and following his transfer to the tier where the attack occurred. Plaintiff alleges Supt. Jones should not have assigned him to Division

3

9, Tier 2B, in the first place. Plaintiff alleges that Supt. Jones had a policy of placing inmates affiliated with the same gang on the same tier in order to reduce the likelihood of attacks on other inmates, and that he had designated Division 9, Tier 2B, as the tier to which Latin Kings gang members were assigned. (*See* Pl.'s Am. Compl., Dkt. No. 52, at ¶¶ 28-34.) Individuals affiliated with this gang considered members of the Milwaukee Kings gang to be their enemies. (*See id.* at ¶ 37.) Plaintiff further alleges that his nickname, "KK" or "Latin King Killer," made him a target and declared enemy of that gang. (*See id.* ¶¶ 38-39.) He alleges that Domma, an inspector at the Cook County Sheriff's Office, knew Plaintiff's nickname and that he was a member of the rival Milwaukee Kings gang, but failed to report Plaintiff's gang affiliation and nickname to the appropriate authorities, which resulted in Plaintiff's placement on Tier 2B. (*See id.* at ¶¶ 180-193.)

Plaintiff further alleges that in July 2016, prior to his assignment in Tier 2B, he was housed in other tiers in Division 9, during which time he was threatened with physical harm by Latin King gang members on Tier 2B, who threatened to stab him if he came onto their tier. (*See id.* at ¶¶ 51-54.) Those threats were prompted by Plaintiff's rival gang affiliation and his nickname. (*See id.* at ¶ 55.) Plaintiff contends that on January 7, 2017, upon learning he had been assigned to Tier 2B, Plaintiff told Sgt. Judkins that he could not be placed on that tier because inmates there did not like his nickname, but neither Sgt. Judkins nor Supt. Jones investigated his complaint. (*Id.* at ¶¶ 58-67.)

Plaintiff further alleges that after his placement on the tier, on January 24, 2017, he personally complained to Supt. Jones that he had been threatened with harm by inmates on the tier who considered themselves to be his enemy, but Supt. Jones failed to act. (*Id.* at ¶¶ 68-75.) He contends that in February 2017, he also relayed his fears to unidentified officers who worked

under the supervision of Supt. Jones and Sgt. Judkins after he was forced to engage in a physical altercation with a Latin Kings gang member, but again no action was taken. (*Id.* at ¶¶ 76-85.)

It is undisputed that at the time of the incident, the Cook County Jail had a formal grievance procedure that required inmates to provide the specific date, location, and time of the incident; the problem grieved, and names or identifiers of the accused person. (*See* Judkins Defs.' SOF, Dkt. No. 126, at ¶ 23; Def. Jones' SOF, Dkt. No. 125 at ¶¶ 27, 30.) Inmates are made aware of the grievance procedure through information contained on the grievance forms and in the inmate handbook. (*See* Judkins Defs.' SOF, Dkt. No. 126 at ¶ 22; Def. Jones' SOF, Dkt No. 125, at ¶ 29.) The grievance forms themselves specify that inmates must provide the specific date, location, and time of the incident, problem or event about which they are grieving, as well as the names or identifier of the accused. (*See* Judkins Defs.' SOF, Dkt. No. 126, at ¶ 23; Def. Jones SOF, Dkt. No. 125, at ¶ 30.)

It also is undisputed that the grievance Plaintiff filed as to the incident did not name or otherwise identify any of the Defendants. (*See* Judkins Defs.' SOF, Dkt. No. 126, at ¶¶ 25-26; Def. Jones SOF, Dkt. No. 125, at ¶¶ 15, 17.) Rather, Plaintiff stated that when the attack occurred "[t]here was no intervening from staff until we ran to the bubble and asked for their help." (Def. Jones' SOF at ¶ 15; *see* March 23, 2017, Grievance, at Dkt. No. 126-1, pg. 49.)

Jail staff responded by stating that the matter had been referred to the Cook County Department of Corrections' Office of Professional Review ("OPR"). (*Id.* at ¶ 16; *see* Dkt. No. 126-1 at pg. 51.) Plaintiff appealed the response, and stated in his appeal that "the CO on 2B did not help me when I was getting stabed [sic]. Failure to protect." (*Id.* at ¶17; *see* Dkt. No. 126-1 at pg. 57.) Plaintiff's appeal was denied, with the following response: "Detainee is advised to

5

contact OPR directly with any additional information regarding this grievance." (*Id.* at ¶ 18; *see* Dkt. No. 126-1 at pg. 57.)

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court must construe all facts in the light most favorable to the nonmoving party and resolve all doubts in favor of that party. *Id.* In regard to exhaustion, a hearing under *Pavey v. Conley* (*Pavey I*), 544 F.3d 739, 741-42 (7th Cir. 2008) is necessary only when there are disputed issues of fact that require further inquiry.

Pursuant to the Prison Litigation Reform Act ("PLRA"), inmates who bring civil rights complaints must first exhaust their administrative remedies within the correctional system. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *Pavey I*, 544 F.3d at 740. This requirement "is 'mandatory'" and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (internal citation omitted).

To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the prison's policy. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (in order to properly exhaust his remedies, an "inmate must file a timely grievance utilizing the procedures and rules of the state's

6

prison grievance process."). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox*, 655 F.3d at 721 (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

That said, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858 (internal citations omitted). This means that an inmate is required to exhaust only those grievance procedures "that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859. Because failure to exhaust is an affirmative defense, the burden of proof lies with the defendants, not with the plaintiff. *Hernandez*, 814 F.3d at 840; *Conyers v. Abitz,* 416 F.3d 580, 584 (7th Cir. 2005).

### III.    ANALYSIS

Defendants argue that Plaintiff failed to exhaust his administrative remedies because this grievance did not name them, refer to their conduct, or provide enough information for jail officials to infer that Plaintiff was complaining about their conduct. Plaintiff contends that he would have filed additional grievances about Defendants' conduct, but was instead told to contact OPR with any additional information.

After these issues were briefed by the parties, the Court requested briefing on an additional issue. The Court observed that Plaintiff's complaint concerned both the initial decision to transfer Plaintiff to Division 9, Tier 2B, and the failure to transfer him to another location after Plaintiff complained of threats made by rival gang members on the tier. Based on the Court's review of the record, it was unclear whether the jail's grievance policy contained an

7

available remedy for Plaintiff to complain that his housing assignment put his security at risk. The parties then briefed this issue.

First, Defendants are correct that the grievance Plaintiff filed was insufficient to exhaust his administrative remedies as to their conduct (to the extent those remedies were available, as will be discussed below). In this regard, the Seventh Circuit has held that an inmate is required to give enough information to provide correctional officials "a fair opportunity to address his complaint." *Maddox*, 655 F.3d at 722. Correctional authorities may require "factual particularity" in a grievance. *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002). The Cook County Jail did require such factual particularity in that inmates were required to provide the specific date, location, and time of the incident; the problem they are grieving, and names or identifiers of the accused person. (*See* Judkins Defs.' SOF, Dkt. No. 126, at ¶ 23; Def. Jones' SOF, Dkt. No. 125 at ¶¶ 27, 30.)

A fair reading of Plaintiff's grievance is that the officer or officers on duty failed to intervene, or failed to intervene quickly enough, during the attack. Defendants are not referenced in the grievance by name or position. Moreover, there is nothing in the grievance that would put jail officials on notice that Plaintiff was complaining about the decision to place him on the tier because of the presence of rival gang members, or the failure to move him from the tier after he complained about threats against him.

In similar circumstances, courts have found that the inmate failed to exhaust his administrative remedies. *See*, *e.g.*, *Stites v. Mahoney*, 594 F. App'x 303, 304-05 (7th Cir. 2015) (unpublished) (finding a failure to exhaust where the only grievance the plaintiff fully exhausted, about waiting too long for a nurse, had nothing to do with the lawsuit, which challenged the facility's policies in regard to the treatment of infectious diseases); *Ambrose v. Godinez*, 510 F.

8

App'x 470, 472 (7th Cir. 2013) (unpublished) (summary judgment for failure to exhaust was proper where plaintiff did not mention two defendants by name or inference in grievances, and did not file a grievance implicating a third defendant in a physical assault or accuse him of withholding medical care). When a prisoner does not name the parties involved or describe the conduct about which he is complaining, this prevents the prison from addressing complaints prior to suit, which is one of the benefits of exhaustion. *See Flemming v. Shah*, No. CIV. 12-761-GPM, 2013 WL 3033102, at *2 (S.D. Ill. June 17, 2013) (citing *Jones*, 549 U.S. at 219). The same reasoning applies here.

Plaintiff contends that he would have filed additional grievances about Defendants' conduct, but was instead told to contact OPR with any additional information. Plaintiff argues that during the OPR investigation, he provided "full information about how Defendants Judkins, Domma, and Jones were informed by, or should have known of, Plaintiff being in mortal danger and needing to be moved to a different tier and how said Defendants ignored this information." (*See* Pl.'s SOAF, Dkt. No. 136, at ¶ 5.) But Plaintiff does not cite to any evidence in the record supporting the statement that he provided "full information" about how Defendants violated his rights. Nor does he explain how the referral of his grievance to OPR prevented him from filing additional grievances about Defendants' conduct.

The only evidence to which Plaintiff points regarding the OPR investigation is the memorandum recommending the investigation be closed. (*See* Pl.'s SOAF, Dkt. No. 136, at ¶ 4; Pl.'s Am. Compl., Dkt. No. 52-1, Ex. I, at pgs. 18-22.) That memorandum states in part that during his telephone interview, Plaintiff was asked what correctional staff did that led to the attack. (*Id.* at pg. 19.) Plaintiff responded that "he had told officers that he could not be on that tier because he was considered a 'king killer.' *Id.* Rodriguez was asked by supervisors if he

9

wanted PC (Protective Custody) but Rodriguez refused and said he only wanted to be moved." *Id.*

Even if this information would have been sufficient to satisfy the jail's grievance policy, not even this general information was provided through the grievance process. As Plaintiff himself points out, the jail's grievance procedure specifically provides that "[t]his procedure is separate and distinct from any investigations assigned to or undertaken by the Office of Professional Review (OPR). An inmate must appeal a referral to OPR of his/her grievance in order to exhaust his administrative remedies under this procedure." (*See* Pl.'s SOAF, Dkt. No. 136, at ¶ 1; Inmate Grievance Procedure, 600.4(j), Dkt. No. 126-1, at pg. 8.)

The OPR investigation, then, is not the same as the grievance process, nor is it a substitute for providing information mandated by the grievance policy. *See Johnson v. Cook Cty. Jail*, No. 14 C 0007, 2015 WL 2149468, at *4 (N.D. Ill. May 6, 2015) (Schenkier, M.J.) (internal affairs investigation is not a substitute for following the procedure to exhaust administrative remedies) (citing *Pavey v. Conley* (*Pavey II*), 663 F.3d 899, 905 (7th Cir. 2011)). In *Pavey II*, the Seventh Circuit observed that the purpose of an internal affairs investigation is not to provide a remedy to the prisoner, but rather to investigate potential employee misconduct. 663 F.3d at 905. Further, prisoners are not allowed to "pick and choose how they present their concerns to prison officials." *Id.* "If a prisoner can be required to submit his grievance in the particular manner and within the precise period of time designated by the prison's administrative procedures, then he must also be required to present his grievance in the proper forum." *Id.* Therefore, "an internal affairs investigation is no substitute for an available grievance process." *Id.* (citing *Panaro v. City of N. Las Vegas,* 432 F.3d 949, 953 (9th Cir. 2005); *Thomas v. Woolum,* 337 F.3d 720, 734 (6th Cir. 2003), *abrogated on other grounds by Woodford v. Ngo,*

548 U.S. 81, 87 (2006)); *see also Singh v. Goord*, 520 F. Supp. 2d 487, 496 (S.D.N.Y. 2007) (observing that "[t]he fact that a prisoner is advised to resolve a complaint through channels available to him other than the formal grievance system" does not render the grievance procedure unavailable or excuse a prisoner's failure to file a grievance). What is more, Plaintiff acknowledges that the grievance process and the internal affairs investigation were separate processes and that jail regulations provided that an inmate must appeal a referral to OPR of his grievance in order to exhaust his remedies.

In his additional response brief (submitted without leave of court), Plaintiff raises three new arguments: (1) that when Plaintiff informed Supt. Jones of the issue on Jan. 24, 2017, Jones failed to inform Plaintiff about the grievance procedure and therefore engaged in misconduct; (2) Plaintiff did not receive a copy of the inmate handbook; and (3) Plaintiff has a learning disability that prevented him from understanding the grievance procedure. (*See* Dkt. No. 146.)

Defendants first argue that the brief should be stricken, but given that Defendants have had the opportunity to respond, the Court will consider these arguments.

First, in regard to the conversation with Supt. Jones, Plaintiff contends in an affidavit that when he advised Supt. Jones of his concerns for his safety, Jones told him, "I can't deal with that[.] I got other things going on." (*See* Pl.'s Additional Resp., Dkt. No. 146, pg. 8, at ¶ 3.) He contends that this amounted to "affirmative misconduct" to dissuade Plaintiff from using the grievance process. (*See id.* at pgs. 4-5.)

Defendant Jones states that Plaintiff admitted that he did not make an attempt to communicate with Jones about his concerns. (*See* Def. Jones' Supp. Resp., Dkt. No. 157, at pg. 6.) Defendant Jones apparently points to an interrogatory in which Plaintiff was asked to:

> Identify and describe all written grievances, complaints, and communications you filed with any employee of CCDOC prior to March 13, 2017, in which you

11

>expressed any concern for your safety, reported any threats to your safety, or discussed any communication you had with Defendant Jones.

(Pl.'s Interrogatory Resp., Dkt. No. 125-2, at ¶ 13.) Plaintiff replied that there were none. (*Id.*)

This interrogatory, however, could be interpreted to refer to written communications, and does not refute Plaintiff's allegations that he discussed his concerns with Supt. Jones. Nevertheless, Plaintiff's contention that Supt. Jones engaged in affirmative misconduct is misplaced. Affirmative misconduct that renders administrative remedies unavailable may include failing to respond to a properly filed grievance, *see Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); falsely telling a prisoner that he cannot file a grievance, *see Thomas v. Reese*, 787 F.3d 845, 847-48 (7th Cir. 2015); preventing a prisoner from accessing grievance forms, *see Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); or threatening him in response to an effort to file a grievance, *see Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006). Plaintiff does not describe any such conduct.

At most, Supt. Jones failed to inform Plaintiff of the jail's grievance procedures. But Plaintiff admitted in his initial response to the summary judgment motion that Defendants' Statements of Facts were accurate, including their statements that inmates are made aware of the grievance procedure through multiple methods, including through the grievance forms themselves and the inmate handbook. (*See* Pl.'s Resp., Dkt. No. 136, at pg. 2.) Plaintiff cannot withdraw that admission through an affidavit that asserts the opposite; that would defeat the purpose of Rule 56.1, which is to identify the facts in dispute in a clear, concise manner. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015).

Additionally, Plaintiff filed more than a dozen grievances during his detention at Cook County Jail, beginning on Nov. 14, 2015. (*See* Pl.'s Grievances, Dkt. No. 126-1, at pgs. 22-66.) The grievance form that Plaintiff completed in connection with this incident called for the "name

and/or identifiers of the accused. (*See id.* at pg. 53.) Further, in a grievance Plaintiff filed on July 19, 2017, he referred to the inmate handbook in regard to the jail's haircut policy (*see id.* at 61), indicating that he did have access to it. The record evidence is clear that Plaintiff was made aware of the grievance procedure at the Cook County Jail.

For similar reasons, Plaintiff's argument that he could not understand the grievance process due to a learning disability is not well-taken. In this regard, Plaintiff focuses on his subjective inability to understand the grievance process. (*See* Pl.'s Additional Resp., Dkt. No. 146, at pg. 4.) However, the availability of administrative remedies is not a subjective inquiry, and "[a] prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance." *See Harper v. Dart*, No. 14 C 01237, 2015 WL 3918944, at *3 and n. 4 (N.D. Ill. June 24, 2015) (Chang, J.) (quoting *Twitty v. McCoskey,* 226 F. App'x 594, 596 (7th Cir. 2007) (unpublished)). Rather, "the jail's *stated* policy is the key;" and "only reasonably publicized procedures must be exhausted." *Harper*, 2015 WL 3918944, at *3 (emphasis in original). Plaintiff admitted in his original response to the summary judgment motion that the jail did reasonably publicize its stated procedures. Consequently, the Court will turn to the issue of whether the jail's stated grievance policy contained an available remedy for Plaintiff to complain that his housing assignment put his security at risk.

Defendants Judkins and Domma explain the jail's classification and housing assignment policy as follows. When detainees are processed into the jail, they are given a security classification of minimum, medium, or maximum. (*See* Judkins Defs.' Supp. SOF, Dkt. No. 155, at ¶ 2.) Under certain circumstances, jail officials may determine that the detainee requires protective custody. (*Id.* at ¶ 3.) The higher the classification level, the more restrictions placed on the detainee. (*Id.* at ¶ 4.) Classification depends on a number of factors, including current

13

charges, incarceration history, physical size and attitude, medical condition, behavioral or physical limitations, and more. (*Id.* at ¶ 5.)

The jail's classification policy includes a directive that the Executive Director or a designee create a classification instrument that includes an initial screening process and a process for determining appropriate housing assignments. (*See* Inmate Classification, Policy 708.3, Dkt. No. 155-1, at pg. 1.) The classification instrument is to take into account gang activity, in addition to the factors set forth above. (*Id.* at pgs. 1-2.) A detainee's housing assignment is based upon several factors, including his or her classification, age, gender, legal status, need for protection or separation, and criminal sophistication. (*See id.* at Policy 708.7, pg. 4.)

The jail's inmate handbook indicates that at the end of the intake process, classification personnel will determine an inmate's housing location and security classification level. Inmates are directed to notify a staff member and file a written inmate request if they believe they have been classified incorrectly. (*See* Inmate Information Handbook, Dkt. No. 155-2, at pg. 4.) The handbook further provides that an inmate grievance may not be filed about "Classification or designation of an inmate as a security risk or protective custody inmate . . . ." (*Id.* at pg. 25.) Inmates are again advised that they may submit an inmate request to have their classification re-evaluated. (*Id.*) An inmate request is a separate process from an inmate grievance. (*See id.* at pgs. 24-25.) The handbook specifies that grievances may be filed in a number of instances, including if an inmate's "safety or well-being is at risk," his living area is unsafe, or his constitutional rights have been violated. (*See id.* at pg. 25.)

Defendants argue that while Plaintiff could not file a grievance with respect to his classification or housing assignment, inmates "can always grieve safety issues and make jail officials aware of any known or imminent threats to their safety or well-being." (*See* Judkins

14

Defs.' Supp. Resp., Dkt. No. 154, at pg. 4.) They contend that there is no genuine dispute that an inmate's complaint that he faces a threat within his housing assignment is grievable. (*See* Def. Jones Supp. Resp., Dkt. No. 157, at pg. 3.) Defendant Jones argues that while Plaintiff could not challenge the "basic fact of his assignment to Tier 2B," he could have at any time filed a grievance contending that rival gang members on the tier posed a specific threat to his safety. (*See id.* at pg. 5.) They point out that detainees do not have a constitutional right to a particular classification or housing assignment. *See Williams v. Faulkner,* 837 F.2d 304, 309 (7th Cir. 1988) ("Prisoners have no constitutionally protected liberty interest in remaining in any particular wing of a prison."), *aff'd sub nom. Neitzke v. Williams,* 490 U.S. 319 (1989).

Plaintiff disputes that there was an available remedy to challenge a housing assignment that put him in danger. He points in part to a grievance identified in the Court's supplemental briefing order that he filed several months after the incident at issue here in regard to his placement on a different tier in Division 9. In that grievance, dated August 6, 2017, Plaintiff stated that he told Sgt. Houston and other officers that he could not be housed in Division 9, apparently because of what it says in his file. (*See* Dkt. No. 126-1, at pg. 63.) He further stated that Officer Torres nonetheless took Plaintiff from Division 10 to Division 9. (*Id.*) Officer Torres then called "Classification," spoke with Sgt. Rocco, and was told to house Plaintiff in Division 9. (*Id.*) Plaintiff stated, "I'm not safe over here and I'm not suppose[d] to be over here." (*Id.*) Plaintiff received a response indicating that his grievance was non-compliant because "security and classification issues cannot be grieved." (*Id.* at pgs. 63-64.) The box checked on the response indicates that the grieved issue was "one of the following non-grievable matters: formulation of departmental policies, inmate classification including designation of an

inmate as a security risk or protective custody inmate, or decisions of the inmate disciplinary hearings officer." (*Id.* at pg. 64.)

The jail's grievance policy could be clearer in explaining how an inmate is to proceed when he contends that his safety is at risk at least in part due to decisions made in regard to his classification or housing. While the policy indicates that a grievance can be filed if an inmate's safety is at risk, the inmate handbook does not explain how to proceed when these issues intersect, as some such policies do. *See*, *e.g.*, *Walter v. Owens*, No. CV514-040, 2014 WL 7185731, at *2 (S.D. Ga. Dec. 16, 2014), *report and recommendation adopted*, No. CV514-040, 2015 WL 224965 (S.D. Ga. Jan. 15, 2015) (setting forth prison grievance policy that excluded changes to housing assignments, "unless there is an alleged threat to the inmate's health or safety."). However, while the policy could be clearer, perfect clarity is not required. Rather, an administrative remedy is unavailable if it is "so opaque that it becomes, practically speaking, incapable of use." *See Ross*, 136 S.Ct. at 1859. "The procedures need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to their meaning." *Id.* Therefore, if the grievance procedures are susceptible of "multiple reasonable interpretations," the inmate must "err on the side of caution." *Id.* "But if 'no ordinary prisoner can make sense of what it demands,' the process is 'unknowable' and thus unavailable.'" *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Ross*, 136 S.Ct. at 1859).

By this standard, the jail's stated policy is not so unclear that it was unavailable to Plaintiff. Plaintiff could and should have filed a grievance pertaining to his allegations that his housing assignment was unsafe due to the presence of rival gang members on the tier to which he was assigned. Even if these issues in some respects concerned classification decisions,

16

Plaintiff was obligated to "err on the side of caution" by presenting them in a grievance. *See Jordan v. Carrillo*, No. CV-09-2668, 2010 WL 2594340, at *3 (D. Ariz. June 23, 2010).

In regard to the Aug. 6, 2017, grievance that was rejected as non-compliant because it raised classification issues, the Court agrees with Defendants that it did not clearly express a specific threat to Plaintiff's safety. While Plaintiff stated that he was "not safe over here" and "not suppose[d] to be over here," he did not explain why he believed he was unsafe or why he should not have been placed in Division 9. Officials might have treated the grievance differently if Plaintiff had provided more information. Further, in regard to the incident at issue, Plaintiff was obligated to raise all the issues that he believed amounted to a failure to protect to protect him from harm in accordance with the jail's stated policies. *See Hernandez*, 814 F.3d at 842. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Pavey II*, 663 F.3d at 905-06. Because he did not do so, the Court cannot speculate as how officials would have treated the grievance or whether certain issues might have been deemed non-grievable.

For these reasons, because the undisputed facts show that Plaintiff had an available grievance remedy that he failed to exhaust, Defendants' motions for summary judgment are granted. Plaintiff's federal claims against these Defendants are dismissed without prejudice for failure to exhaust administrative remedies. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (because states may allow cure of failure to exhaust, or may allow litigation in state court without exhaustion, "*all* dismissals under § 1997e(a) should be without prejudice") (emphasis in original). Because of the dismissal of the federal claims, the state-law indemnification claim is dismissed without prejudice as well.

Plaintiff has no further recourse in federal court at this time. The dismissal therefore constitutes a final appealable order. *See Maddox*, 655 F.3d at 716 (explaining that order dismissing section 1983 claim for failure to exhaust administrative remedies is appealable where there are no further remedies that plaintiff can pursue). Additionally, Defendant Hernandez is dismissed for failure to effectuate service of process *See* Fed. R. Civ. P. 4(m). The Court further observes that the reasoning regarding failure to exhaust would apply similarly to this Defendant had he been served.

Final judgment will be entered. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).[1]

---

[1] Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## IV. CONCLUSION

Defendants Judkins and Domma's motion for summary judgment (Dkt. No. 122) is granted, as is Defendant Jones' motion for summary judgment (Dkt. No. 123). Plaintiff's federal claims against these Defendants are dismissed without prejudice for failure to exhaust, and his state-law indemnification claim likewise is dismissed without prejudice. Additionally, Plaintiff's claims against Defendant Hernandez are dismissed without prejudice for failure to effectuate service of process. The Clerk of Court is directed to enter final judgment for Defendants and against Plaintiff. This case is closed.

IT IS SO ORDERED.

Date: 10/26/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge